[Cite as *State v. Smith*, 2024-Ohio-6097.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | | C.A. No.    31052 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOHN DOUGLAS SMITH | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.    CR 19 04 1499 |

### DECISION AND JOURNAL ENTRY

Dated: December 31, 2024

CARR, Presiding Judge.

**{¶1}** Appellant, John Douglas Smith, appeals the judgment of the Summit County Court of Common Pleas. This Court reverses and remands.

I.

**{¶2}** The instant controversy arises out of a traffic stop that occurred during the early morning hours of March 25, 2019. Smith was a front seat passenger in an SUV that was stopped by Akron police. During the course of the stop, police informed Smith that he could be cited for a seatbelt violation. When Smith subsequently refused to give his identifying information, he was removed from the vehicle and placed in handcuffs. Police then conducted a search of Smith's person and discovered a baggie containing methamphetamine in the pocket of his pants.

**{¶3}** The Summit County Grand Jury indicted Smith on one count of aggravated possession of drugs in violation of R.C. 2925.11(A)/(C)(1)(a). Smith pleaded not guilty to the charge at arraignment. Smith filed a motion to suppress the evidence obtained as a result of the

stop. The State filed a brief in opposition to the motion. When the parties appeared for the suppression hearing, Smith and the State stipulated to the admission of two officer-worn body camera videos that depicted the stop. The parties agreed that the trial court could make factual findings based on the body camera video footage and then rule on the motion. No other evidence was admitted at the suppression hearing. The trial court ultimately issued an order denying the motion to suppress.

{¶4}    Smith pleaded no contest to the sole count in the indictment and the trial court found him guilty. The trial court sentenced Smith to a one-year term of community control with a number of conditions.

{¶5}    On appeal, Smith raises one assignment of error pertaining to the trial court's ruling on the motion to suppress.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY DENYING JOHN SMITH'S MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF HIS RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶6}    In his sole assignment of error, Smith maintains that the trial court erred in concluding that there was a lawful basis to place him under arrest. Smith thus contends that the contraband obtained during the search incident to arrest was inadmissible.

{¶7}    The Supreme Court of Ohio has stated as follows:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.

Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 2003-Ohio-5372, ¶ 8.

Background

{¶8} In his motion to suppress, Smith argued that all of the evidence obtained after he was arrested was inadmissible because he was not charged with an arrestable offense and there was no basis to conduct a search of his person. The State filed a brief in opposition to the motion arguing that Smith violated a local ordinance requiring him to wear a seatbelt and that he was placed under arrest because he failed to provide law enforcement with the information necessary to issue him a citation.

{¶9} When the parties appeared for the suppression hearing, the State indicated that the parties had reached a stipulation regarding the authenticity of the body camera videos worn by the two officers involved in the traffic stop. After noting that the parties had submitted briefs addressing the legal issues raised in the motion to suppress, the State indicated that the parties were in agreement that the trial court could make factual findings based on a review of the body camera videos and then rule on the motion. Smith indicated the State had accurately stated the terms of the parties' stipulation and agreement.

{¶10} The trial court set out the following factual findings in support of its ruling denying the motion to suppress. On the evening of March 25, 2019, Officer Fashempour of the Akron Police Department was on patrol when he observed a vehicle with expired license plates. Officer Fashempour activated his overhead lights and initiated a stop of the SUV in question. After obtaining the identity of the driver, Officer Fashempour learned that the driver was driving under suspension. Officer Fashempour placed the driver in his cruiser and returned to the SUV, where

Smith was a front seat passenger. When Officer Fashempour asked Smith for his name, he indicated that he was "Doug Smith." Officer Fashempour advised Smith that he would be cited for failure to wear his seatbelt. Despite multiple requests from Officer Fashempour, Smith refused to give his social security number or his date of birth.

{¶11} Smith was subsequently placed in handcuffs. A second officer escorted Smith away from the vehicle. Smith persisted in refusing to give any identifying information, other than his name. At one point, Smith stated that he did not know his social security number. The second officer searched Smith and discovered that Smith had a baggie containing a controlled substance in the pocket of his pants. Smith stated that he did not know about the controlled substance and that the pants he was wearing did not belong to him. The second officer informed Smith of his *Miranda* rights. A search of the vehicle did not reveal any contraband. Thereafter, when Smith ultimately revealed information that allowed the officers to confirm his identity, the officers learned that Smith had an outstanding arrest warrant.

{¶12} In the portion of its analysis where the trial court concluded that there was probable cause to place Smith under arrest, the trial court first found Smith had violated Akron City Code 72.70(B)(3), which prohibits a passenger from sitting in the front seat of an automobile being operated on any street "unless he is wearing all of the available elements of a properly adjusted occupant restraining device." In support of this determination, the trial court found as follows:

> [Officer] Fashempour approached the driver's side of the vehicle within a minute of activating his lights and sirens. [Smith] was sitting in the front passenger seat. [Officer] Fashempour stated that he did not see [Smith] have his seatbelt on when he initially approached the vehicle. In addition, [Smith] did not have his seatbelt on when [Officer] Fashempour approached him on the passenger side of the vehicle.

{¶13} Based on the foregoing facts, the trial court determined that Smith had violated Akron City Code 72.70(B)(3). With respect to whether police had the authority to place Smith

under arrest, the trial court answered that question in the affirmative based on the authority of R.C. 2935.26(A)(2), which permits an officer to make an arrest of a minor misdemeanor offender under circumstances where "[t]he offender cannot or will not offer satisfactory evidence of his identity." The trial court concluded that, under the facts of this case, the officers were justified in placing Smith under arrest because he repeatedly denied their requests for the information necessary to issue him a citation.

## Discussion

**{¶14}** On appeal, Smith emphasizes that Akron City Code 72.70(B)(3) prohibits front-seat passengers from riding without a seatbelt in "an automobile being operated on any street[.]" Smith contends the State failed to present any evidence that he was not wearing a seatbelt at a time when the SUV in question was being operated.[1] Smith argues that several minutes elapsed between the time the SUV was stopped and the time that Officer Fashempour first observed Smith without a seatbelt. Smith concludes that because there was no evidence of the seatbelt violation, he had a lawful right to refuse to provide his identifying information.

**{¶15}** The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const., amend. IV. The Ohio Constitution similarly provides "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated[.]" Ohio Const. art., I, § 14.

---

[1] In its merit brief, the State suggests that Smith is not contesting the trial court's factual findings on appeal. The State's position in this regard misconstrues the gravamen of Smith's argument, which is that the trial court's determination that he violated the seatbelt ordinance was predicated on erroneous factual findings.

**{¶16}** "The exclusionary rule is a judicially created remedy for Fourth Amendment violations." *State v. Castagnola*, 2015-Ohio-1565, ¶ 92, citing *United States v. Calandra*, 414 U.S. 338, 348 (1974). "[E]vidence obtained as a result of an illegal arrest is inadmissible at trial." *State v. Henderson*, 51 Ohio St.3d 54, 56 (1990).

**{¶17}** Akron City Code 72.70(B)(3) provides, in relevant part, that "[n]o person shall . . . [o]ccupy, as a passenger, a seating position on the front seat of an automobile being operated on any street or highway unless he is wearing all of the available elements of a properly adjusted occupant restraining device."

**{¶18}** In turn, R.C. 2935.26(A) provides as follows:

[W]hen a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:

(1) The offender requires medical care or is unable to provide for his own safety.

(2) The offender cannot or will not offer satisfactory evidence of his identity.

(3) The offender refuses to sign the citation.

**{¶19}** Generally speaking, a police officer cannot arrest an individual for committing a minor misdemeanor offense absent the existence of one of the enumerated circumstances in R.C. 2935.26(A). *See State v. McCall*, 2010-Ohio-4283, ¶ 10 (9th Dist.). Here, the trial court's application of R.C. 2935.26(A)(2) was predicated on its underlying determination that Officer Fashempour was authorized to issue a citation to Smith because there was probable cause that Smith had violated Akron City Code 72.70(B)(3). "Probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent man in believing that an offense has been committed." *State v. Pavao*, 38 Ohio App.3d 178, 178 (9th Dist. 1987), citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Smith's argument on appeal focuses on the trial court's factual findings pertinent to the underlying seatbelt violation.

{¶20} A review of Officer Fashempour's body camera video reveals that Officer Fashempour initially approached the SUV on the driver's side and spoke to the driver about the expired license plates and the license suspension. The portion of the video showing Officer Fashempour's initial approach, which resulted in the driver being taken into custody, does not contain any footage depicting whether or not Smith was wearing his seat belt at that time. The video reveals that when Officer Fashempour subsequently approached the passenger side of the SUV, Officer Fashempour immediately asked Smith for his name and identification. Smith gave his name but said he did not have any identification. After expressing some confusion, Smith asked if was under arrest. Officer Fashempour answered in the negative but told Smith that he needed Smith's social security number. When Smith asked if he was in trouble, Officer Fashempour responded, "Well, right now you're not wearing your seatbelt. So, that is a citable offense." Smith stated that he took off his seatbelt after the stop. Officer Fashempour then stated, "See man, you're not wearing a seat belt, are you? You have to identify yourself to me." When Smith stated that he had already given his name, Officer Fashempour asked whether Smith had an outstanding warrant. Smith again asked if he was under arrest. Officer Fashempour responded that he could be placed under arrest for failing to identify himself. Smith maintained his refusal to give any additional information. At that point, Smith was removed from the vehicle and placed in handcuffs. In the video, Smith can be heard saying, "I had [my seatbelt] on and I took it off. This vehicle . . . isn't running, Sir." Smith then stated that Officer Fashempour could see that Smith was wearing a seatbelt at the time that Officer Fashempour first approached the SUV. Officer Fashempour responded, "I did not see it." Shortly thereafter, the second officer escorted Smith away from the SUV.

{¶21} The second officer's body camera video picks up at the point where Smith was removed from the SUV. Although the video shows Smith questioning the basis for his arrest and refusing to give any identifying information, there is no footage that is probative as to whether Smith was wearing a seatbelt. Soon after Smith was escorted away from the SUV, the second officer searched Smith's person and discovered the baggie containing drugs.

{¶22} Under these circumstances, we are compelled to sustain Smith's assignment of error. The State bears the burden at a suppression hearing of demonstrating that a warrantless search or seizure satisfies Fourth Amendment standards. *Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999). Furthermore, we reiterate that this Court is not required to accept the trial court's factual findings when they are not supported by competent, credible evidence. *State v. Ray Rogers*, 2017-Ohio-357, ¶ 8 (9th Dist.). Pursuant to the parties' stipulation and agreement discussed above, the evidentiary basis from which the trial court could make factual findings in this case was limited to its review of the officer's body camera videos.

{¶23} Upon this Court's review of the body camera videos, we cannot say that the trial court's finding that Smith committed a seatbelt violation was supported by competent, credible evidence. Neither body camera video contains footage of the SUV while it was in operation. While Officer Fashempour's body camera video captures his initial approach of the SUV, that portion of the video does not indicate whether Smith was wearing a seatbelt. When Officer Fashempour approached the passenger side of the vehicle approximately three and a half minutes after making his initial approach, he immediately asked for Smith's identification and social security number. It was only after some intermittent questioning that, in response to Smith asking if he was in trouble, Officer Fashempour stated, "Well, right now you're not wearing your seatbelt." Officer Fashempour's comments about the seatbelt reflected present-tense observations.

Moreover, the body camera video does not support the trial court's finding that "[Officer] Fashempour stated that he did not see [Smith] have his seatbelt on when he initially approached the vehicle." The video reveals that Smith repeatedly insisted that he had been wearing his seatbelt when Officer Fashempour made his initial approach and, at one point, Officer Fashempour responded, "I did not see it." Officer Fashempour's denial in this regard was not akin to an affirmative statement that he observed Smith without a seatbelt during his initial approach. At best, Officer Fashempour stated that he could not substantiate Smith's claim that he was wearing a seatbelt when the SUV was stopped. If there had been a conventional suppression hearing in this matter, the State undoubtedly would have inquired of Officer Fashempour regarding whether he observed Smith wearing a seatbelt during the initial approach. No such inquiry took place, however, due to the parties' stipulation and agreement that the trial court could make findings based solely on its review of the body camera videos. Under these circumstances, we cannot say that there was an evidentiary basis from which to conclude that Smith violated Akron City Code 72.70(B)(3).

{¶24} As the trial court's factual findings were not supported by competent, credible evidence, Smith's assignment of error is sustained.

### III.

{¶25} Smith's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

DONALD K. POND, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.